**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

GOYARD ST-HONORE,

      Plaintiff,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

      Defendants.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, Goyard St-Honore ("Goyard" or "Plaintiff") hereby sues Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" (collectively "Defendants"). Defendants are promoting, offering for sale, selling, and/or distributing goods within this district bearing and/or using counterfeit and confusingly similar imitations of Goyard's trademarks through at least the fully interactive commercial Internet websites and supporting domains operating under the domain names identified on Schedule "A" (the "Subject Domain Names"). In support of its claims, Goyard alleges as follows:

## JURISDICTION AND VENUE

1.     This is an action for injunctive relief and damages for federal trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1125(a), and 1125(d), The All Writs Act, 28 U.S.C § 1651(a), and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction pursuant to 28

U.S.C. § 1367 over Goyard's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Each Defendant is subject to personal jurisdiction in this district because each Defendant operates commercial websites accessible in this district, conducts business by registering and maintaining the Subject Domain Names within the United States, and/or directs business activities toward consumers throughout the United States, including within the State of Florida and this district through at least the fully interactive commercial Internet websites accessible and doing business in Florida and operating under the Subject Domain Names. Alternatively, based on their overall contacts with the United States, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  Defendants are, upon information and belief, non-resident in the United States and engaged in infringing activities and cause harm within this district by advertising, offering to sell and/or selling infringing products into this district.

## THE PLAINTIFF

4.      Goyard is a foreign business entity organized under the laws of the Republic of France with its principal place of business located at 16 place Vendôme in Paris, France 75001. Goyard is, in part, engaged in the business of manufacturing and distributing throughout the world, including within this district, a variety of high-quality goods under multiple world-famous common law and federally registered trademarks, including those identified below.  Goyard offers for sale and sells its trademarked goods in boutiques throughout the world, including within this

district and in other locations in the United States.  Defendants, through the advertising, offering for sale, and sale of counterfeit and infringing Goyard branded products, are directly, and unfairly, competing with Goyard's economic interests in the United States, including the State of Florida, and causing Goyard irreparable harm and damage within this jurisdiction.

5.      Like many other famous trademark owners, Goyard suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Goyard's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce websites. The natural and intended byproduct of Defendants' combined actions is the erosion and destruction of the goodwill associated with the Goyard name and associated trademarks and the destruction of the legitimate market sector in which it operates.

6.      To combat the indivisible harm caused by the concurrent actions of Defendants and others engaging in similar conduct, each year Goyard expends significant monetary resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement. The exponential growth of counterfeiting over the Internet has created an environment that requires Goyard to expend significant resources across a wide spectrum of efforts to protect both consumers and itself from confusion and erosion of the goodwill embodied in Goyard's brand.

## THE DEFENDANTS

7.      Defendants operate through domain names registered with registrars in multiple countries, including the United States, and are comprised of individuals, business entities of unknown makeup, and/or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions or redistribute products from the same or

similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).  Defendants direct their business activities towards consumers throughout the world, including the United States and within this district through the simultaneous operation of at least the interactive commercial Internet websites and supporting domains existing under the Subject Domain Names.

8.      Defendants use aliases in conjunction with the operation of their businesses, including but not limited to those identified by Defendant Number on Schedule "A."

9.      Defendants are directly and personally contributing to, inducing, and engaging in the sale of counterfeit branded products as alleged herein, often as partners, co-conspirators and/or suppliers.

10.      Defendants are part of an ongoing scheme to create and maintain an illegal marketplace enterprise on the World Wide Web, which (i) confuses consumers regarding the source of Defendants' goods for profit, and (ii) expands the marketplace for illegal, counterfeit versions of Goyard's branded goods while shrinking the legitimate marketplace for Goyard's genuine branded goods. The natural and intended byproduct of Defendants' combined, concurrent actions is the erosion and destruction of the goodwill associated with Goyard's famous name and associated trademarks, as well as the destruction of the legitimate market sector in which Goyard operates.

11.      Defendants are the past and/or present controlling forces behind the operation of the Internet websites operating under, at least, the Subject Domain Names.

12.      Defendants directly engage in unfair competition with Goyard by (i) offering for sale and/or selling goods each bearing and/or using counterfeits and infringements of one or more of Goyard's trademarks to consumers within the United States and this district through at least the

interactive commercial Internet websites and supporting domains operating under the Subject Domain Names, and any additional domains and websites not yet known to Goyard and (ii) creating and maintaining an illegal marketplace enterprise for the purpose of diverting business from Goyard's legitimate marketplace for its genuine goods. Defendants have purposefully directed some portion of their unlawful activities towards consumers in the State of Florida through the advertisement, offer to sell and/or sale of counterfeit and infringing Goyard branded goods into the State, and by operating an illegal marketplace enterprise, which impacts and interferes with legitimate commerce throughout the United States, including within the State of Florida.

13.     Defendants have registered, established or purchased, and maintained their respective Subject Domain Names and the websites operating thereunder. Defendants have engaged in fraudulent conduct with respect to the registration of the Subject Domain Names by providing false and/or misleading information to their various registrars during the registration or maintenance process. Many Defendants have registered and/or maintained their Subject Domain Names to engage in unlawful counterfeiting and infringing activities.

14.     Defendants will likely continue to register or acquire new domain names for the purpose of selling and/or offering for sale goods bearing and/or using counterfeit and confusingly similar imitations of one or more of Goyard's trademarks unless preliminarily and permanently enjoined. Moreover, Defendants will likely continue to maintain and grow their illegal marketplace enterprise at Goyard's expense unless preliminarily and permanently enjoined.

15.     Defendants' Subject Domain Names, and any other domain names and aliases used in connection with the sale of counterfeit and infringing goods bearing and/or using one or more of Goyard's trademarks are essential components of Defendants' counterfeiting and infringing activities and are one of the means by which Defendants further their counterfeiting and

infringement scheme and cause harm to Goyard. Moreover, Defendants are using Goyard's famous name and trademarks to drive Internet consumer traffic to their websites operating under the Subject Domain Names, thereby creating and increasing the value of the Subject Domain Names and decreasing the size and value of Goyard's legitimate consumer marketplace and intellectual property rights at Goyard's expense.

## COMMON FACTUAL ALLEGATIONS

### Plaintiff's Trademark Rights

16.     Goyard is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively the "Goyard Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| | 1,709,953 | August 25, 1992 | IC 016 – Office requisites; namely, agendas and spare sheets therefor, desk pads, pen holders, writing pads, pencil jars for desk use, mail trays for desk use, note books, and pen cases.<br><br>IC 018 – Articles of fancy leather, leather, cloth and skin articles;, namely, valises, travel trunks, cosmetic cases, travelling bags, handbags, brief cases, attache cases, brief case type document cases, toilet cases sold empty, makeup cases sold empty, wallets, hat boxes for travel, business card cases, key cases, garment bags for travel, jewel cases, umbrellas, cloth carriers, articles for dogs;, namely, dog collars, dog leashes, dog clothes and carrying bags. |

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| GOYARD | 1,821,224 | February 15, 1994 | IC 016 – Office requisites; namely, agendas, repertories, note books, check cases and pen cases.<br><br>IC 018 – Articles of fancy leather, leather, cloth and skin articles; namely, valises, travel trunks, cosmetic cases sold empty, traveling bags, handbags, briefcases, attache cases, briefcase type document cases, toilet cases sold empty, make-up cases sold empty, wallets, hat boxes for travel, business card cases, key cases, draw string pouches, garment bags for travel, necktie cases, umbrellas, saddlebags, saddle covers, and articles for dogs; namely, dog collars, dog leashes, dog clothes and carrying bags. |
| | 1,854,666 | September 20, 1994 | IC 018 – Articles of fancy leather, leather, cloth and skin articles; namely, valises, travel trunks, cosmetic cases sold empty, traveling bags, handbags, brief cases, attache cases, brief case type document cases, toilet cases sold empty, makeup cases sold empty, wallets, hat boxes for travel, business card cases, key cases, garment bags for travel, articles for dogs; namely, dog collars, dog leashes. |
| <br>(E. Goyard Honore Paris) | 3,418,288 | April 29, 2008 | IC 018 – Bags and traveling sets, namely, traveling bags; garment bags for travel; luggage trunks; valises, vanity cases sold empty, rucksacks, handbags, beach bags, school bags; suitcases, briefcases, pocket wallets, purses, not of precious metal, leather key cases; business card cases; umbrellas. |

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| | 4,036,898 | October 11, 2011 | IC 014 – Goods made of precious metals and their alloys, other than for dental use, in the nature of jewelry, namely, bracelets, boxes for watches, jewelry boxes.<br><br>IC 018 – Goods of leather and imitations of leather, namely, travelling bags, travelling sets comprised of luggage, and garment bags for travel; trunks; suitcases; unfitted vanity cases; rucksacks; handbags; sports bags; beach bags; school bags; attaché cases; document cases; briefcases; school satchels; under-arm bags, namely, handbags; leather goods, namely, wallets, purses not of precious metal, leather key cases, card holders for wallets; umbrellas.<br><br>IC 025 – Clothing for men, women and children, namely, shawls, scarf, gloves, neckties, belts, footwear, except orthopedic footwear, namely, slippers. |
| | 5,532,309 | August 7, 2018 | IC 009 – Spectacle cases, protective cases for portable telephones, tablet computers, and computers.<br><br>IC 014 – Jewelry, namely, key rings, bracelets, presentation boxes for jewelry, jewelry boxes; presentation boxes for watches.<br><br>IC 016 – Products made of cardboard or paper, namely, boxes of cardboard or paper, passport holders, office requisites excluding furniture, namely, diary covers being stationery, document holders, desk pads, writing instruments, namely, pens, ball-point pens, pencil cases. |

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| | | | IC 018 – Products made of leather or imitations of leather, namely, straps of leather, leather leashes, boxes of leather or imitation leather, wallets of leather or imitation leather, briefcases of leather; traveling trunks, traveling bags, leather traveling sets, namely, leather cases and pouch sets for travel, garment bags for travel; trunks, attaché cases, suitcases; unfitted vanity cases, backpacks, handbags, beach bags, sports bags, bags for carrying animals, briefcases, purses, wallets, coin purses, key cases being leather products, card cases being wallets, credit card holders being wallets; collars for animals, animal leashes; clutch bags.<br><br>IC 025 – Clothing, namely, belts being clothing, neckties, shawls, scarves. |
| | 5,742,053 | May 07, 2019 | IC 009 –Spectacle cases; protective cases for mobile telephones, tablets, electronic diaries and computers.<br><br>IC 014 – Jewelry, namely, key rings, bracelets, presentation boxes for jewelry, jewelry boxes; chronometric apparatus and instruments, namely, watch cases; presentation cases for watches; all the aforesaid goods of French origin or made in France.<br><br>IC 016 – Products made of cardboard or paper, namely, boxes of cardboard or paper; money clips; passport holders; office requisites, not being furniture, namely, paper knives, diary covers being stationery, letter trays, desk pads, writing instruments, namely, pens, ball-point pens, pencil holders, pencil cases. |

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| | | | IC 018 – Products made of leather or imitations of leather, namely, straps in the nature of belts of leather, leather leashes, boxes of leather or imitation leather, wallets of leather or imitation leather, briefcases of leather; traveling trunks; traveling bags; travelling sets consisting of leather cases and pouch sets for travel; garmet bags for travel; trunks; attaché cases, suitcases; vanity cases sold empty; backpacks; handbags; beach bags; sports bags; bags for carrying animals; briefcases; purses; wallets; coin purses; key cases of leather; card cases being wallets; credit card holders being wallets; collars for animals; leashes for animals; clutch bags; all the aforesaid goods of French origin or made in France.<br><br>IC 025 – Clothing, namely, neckties, shawls, scarves, all the aforesaid goods of French origin or made in France. |
| | 5,753,841 | May 21, 2019 | IC 003 – Shoe polish.<br><br>IC 009 – Spectacle cases; protective cases for portable telephones, tablets, and computers; cases for portable telephones.<br><br>IC 014 – Jewelry, namely, key rings, bracelets; jewelry boxes; chronometric instruments and apparatus, namely, cases for watches.<br><br>IC 016 – Products made of cardboard or paper, namely, boxes of cardboard or paper; money clips; passport holders; office requisites, excluding furniture, namely, cases for stationery, covers for stationery diaries, desk pads; pens, ball-point pens, pencil cases. |

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| | | | IC 018 – Goods made of leather or imitations leather, namely, leather or imitation leather boxes; leather or imitation leather small handbags; leather briefcases; travel trunks; travel bags; leather cases and pouch sets for travel; garment bags for travel; travelling trunks, attaché cases, suitcases; vanity cases sold empty; backpacks; handbags; beach bags; sports bags; bags for carrying animals; briefcases; wallets; purses; coin purses; leather goods, namely, key cases; card holders in the nature of a wallet; credit card holders in the name of a wallet; collars for animals; animal leashes; clutch bags.<br><br>IC 021 – Shoe brushes.<br><br>IC 025 – Clothing, namely, belts, neckties, shawls, scarves. |

The Goyard Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the Goyard Marks are attached hereto as Composite Exhibit "1."

17.     The Goyard Marks have been used in interstate commerce to identify and distinguish Goyard's high-quality goods for an extended period of time.

18.     The Goyard Marks have been used in commerce by Goyard long prior in time to Defendants' use of copies of those Marks. The Goyard Marks have never been assigned or licensed to any of the Defendants in this matter.

19.     The Goyard Marks are symbols of Goyard's quality, reputation and goodwill and have never been abandoned. Goyard has carefully monitored and policed the use of the Goyard Marks.

20.     The Goyard Marks are well-known and famous and have been for many years. Goyard expends substantial resources developing and otherwise promoting the Goyard Marks. The Goyard Marks qualify as famous marks as that term is used in 15 U.S.C. § 1125(c)(1).

21.     Goyard extensively uses and promotes the Goyard Marks in the United States in association with the sale of high-quality goods.

22.     As a result of Goyard's efforts, members of the consuming public readily identify merchandise bearing or sold using the Goyard Marks as being high-quality goods sponsored and approved by Goyard.

23.     Accordingly, the Goyard Marks have achieved secondary meaning among consumers as identifiers of high-quality goods.

24.     Genuine goods bearing the Goyard Marks are widely legitimately advertised and promoted by Goyard, its authorized distributors, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Goyard's overall marketing and consumer education efforts. Thus, Goyard expends significant monetary and other resources on Internet marketing and consumer education regarding its products, including search engine optimization ("SEO"), search engine marketing ("SEM"), and social media strategies. Those strategies allow Goyard and its authorized retailers to educate consumers fairly and legitimately about the value associated with the Goyard brand and the goods sold thereunder, and the problems associated with the counterfeiting of Goyard's trademarks.

Similarly, many of Defendants' websites are indexed on search engines and compete directly with Goyard for space and consumer attention in search results.

**Defendants' Infringing Activities**

25.     At all times relevant hereto, Defendants in this action have had full knowledge of Goyard's ownership of the Goyard Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

26.     Defendants are each promoting, advertising, distributing, offering for sale and/or selling goods in interstate commerce bearing and/or using counterfeit and confusingly similar imitations of one or more of the Goyard Marks (the "Counterfeit Goods") through, at least, the fully interactive commercial Internet websites and supporting domains operating under the Subject Domain Names. Specifically, Defendants are using the Goyard Marks to initially attract online consumers and drive them to Defendants' e-commerce store websites operating under the Subject Domain Names. Defendants are each using identical copies of one or more of the Goyard Marks for different quality goods. Goyard has used the Goyard Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Goyard's merchandise.

27.     Defendants' Counterfeit Goods are of a quality substantially different than that of Goyard's genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, offering for sale, and/or selling substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality products offered for sale by Goyard despite Defendants' knowledge that they are without authority to use the Goyard Marks. Defendants' actions are likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered

13

for sale in or through Defendants' e-commerce store websites are genuine goods originating from, associated with, and/or approved by Goyard.

28.     Defendants advertise their e-commerce store websites, including their Counterfeit Goods offered for sale, to the consuming public via at least their commercial websites operating under the Subject Domain Names. In so doing, Defendants improperly and unlawfully use one or more of the Goyard Marks without Goyard's permission.

29.     Defendants are concurrently employing and benefiting from substantially similar advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of one or more of the Goyard Marks. Specifically, Defendants are using counterfeits and infringements of Goyard's famous name and the Goyard Marks, or variations thereof, to make their websites selling unauthorized goods appear more relevant and attractive to consumers searching for both Goyard and non-Goyard goods and information online. By their actions, Defendants are jointly contributing to the creation and maintenance of an unlawful marketplace operating in parallel to the legitimate marketplace for Goyard's genuine goods. Defendants are causing individual, concurrent, and indivisible harm to Goyard and the consuming public by (i) depriving Goyard of its right to fairly compete for space online and within search engine results and reducing the visibility of Goyard's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Goyard Marks, (iii) increasing Goyard's overall cost to market its goods and educate consumers about its brand via the Internet, and/or (iv) maintaining an illegal marketplace enterprise, which perpetuates the ability of Defendants and future entrants to that marketplace to confuse consumers and harm Goyard with impunity.

30.    Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Goyard and the consuming public for Defendants' own benefit.

31.    Defendants' use of the Goyard Marks, including the promotion and advertisement, reproduction, distribution, offering for sale, and/or sale of their Counterfeit Goods, is without Goyard's consent or authorization.

32.    Defendants are engaging in the above-described unlawful counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Goyard's rights for the purpose of trading on Goyard's goodwill and reputation. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Goyard and the consuming public will continue to be harmed.

33.    Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers into believing there is a connection or association between Goyard's genuine goods and Defendants' Counterfeit Goods, which there is not.

34.    Moreover, certain Defendants (the "Cybersquatting Defendants") have registered their respective Subject Domain Name(s) using marks that are nearly identical and/or confusingly similar to at least one of the Goyard Marks (collectively the "Cybersquatted Subject Domain Names").

35.    The Cybersquatting Defendants do not have, nor have they ever had, the right or authority to use the Goyard Marks for any purpose. Further, the Goyard Marks have never been

assigned or licensed to be used on any of the websites operating under the Cybersquatted Subject Domain Names.

36.    The Cybersquatting Defendants have provided false and/or misleading contact information when applying for the registration of the Cybersquatted Subject Domain Names or have intentionally failed to maintain accurate contact information with respect to the registration of the Cybersquatted Subject Domain Names.

37.    The Cybersquatting Defendants have never used any of the Cybersquatted Subject Domain Names in connection with a bona fide offering of goods or services.

38.    The Cybersquatting Defendants have not made any bona fide non-commercial or fair use of the Goyard Marks on a website accessible under any of the Cybersquatted Subject Domain Names.

39.    The Cybersquatting Defendants have intentionally incorporated at least one of the Goyard Marks in their Cybersquatted Subject Domain Names to divert consumers looking for Goyard's genuine website to their own Internet websites for commercial gain.

40.    Given the visibility of Defendants' various websites and the similarity of their concurrent actions, it is clear Defendants are either affiliated, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Goyard and the overall consumer market in which it operates because of Defendants' concurrent actions.

41.    Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Goyard.

42.    Goyard has no adequate remedy at law.

43.     Goyard is suffering irreparable injury and has suffered substantial damages because of Defendants' unauthorized and wrongful use of the Goyard Marks. If Defendants' intentional counterfeiting and infringing, cybersquatting, and unfairly competitive activities, and their illegal marketplace enterprise are not preliminarily and permanently enjoined by this Court, Goyard and the consuming public will continue to be harmed while Defendants wrongfully earn a substantial profit.

44.     The harm and damages sustained by Goyard has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods and by the creation, maintenance, and very existence of Defendants' illegal marketplace enterprise.

## COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

45.     Goyard hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 44 above.

46.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the Goyard Marks in commerce in connection with the promotion, advertisement, distribution, sale, and/or offering for sale of the Counterfeit Goods.

47.     Specifically, each Defendant is promoting and otherwise advertising, offering for sale, selling, and distributing products bearing and/or using counterfeits and infringements of one or more of the Goyard Marks. Defendants are continuously infringing and inducing others to infringe the Goyard Marks by using one or more of them to advertise, promote, offer to sell, and/or sell counterfeit and infringing Goyard branded goods.

48.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

49.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages and irreparable harm to Goyard and are unjustly enriching Defendants with profits at Goyard's expense.

50.     Defendants' above-described unlawful actions constitute counterfeiting and infringement of the Goyard Marks in violation of Goyard's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

51.     Goyard has suffered and will continue to suffer irreparable injury and damages while Defendants are unjustly profiting due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

### COUNT II - FALSE DESIGNATION OF ORIGIN
### PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

52.     Goyard hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 44 above.

53.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of the Goyard Marks have been widely advertised and offered for sale throughout the United States via the Internet.

54.     Each Defendant's Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of the Goyard Marks are virtually identical in appearance to Goyard's genuine goods. However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion among consumers as to at least the origin or sponsorship of their Counterfeit Goods.

55.     Defendants have used in connection with their advertisement, offers for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and designs, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Goyard's detriment.

56.     Defendants have each authorized infringing uses of one or more of the Goyard Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded products. Defendants have also misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

57.     Additionally, Defendants are simultaneously using counterfeits and infringements of one or more of the Goyard Marks to unfairly compete with Goyard and others for space within organic and paid search engine and social media results. Defendants are thereby jointly (i) depriving Goyard of valuable marketing and educational space online, which would otherwise be available to Goyard and (ii) reducing the visibility of Goyard's genuine goods on the World Wide Web and across social media platforms.

58.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

59.     Goyard has no adequate remedy at law and has sustained both individual and indivisible injury and damages caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Goyard will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages, while Defendants are unjustly profiting from those actions.

## COUNT III - CLAIM FOR RELIEF FOR CYBERSQUATTING
## PURSUANT TO § 43(d) OF THE LANHAM ACT (15 U.S.C. § 1125(d))
### (Against Certain Defendants Only)

60.     Goyard hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 44 above.

61.     At all times relevant hereto, Goyard has been and still is the owner of the rights, title, and interest in and to the Goyard Marks.

62.     The Cybersquatting Defendants have acted with the bad faith intent to profit from the Goyard Marks and the goodwill associated with the Goyard Marks by registering and using the Cybersquatted Subject Domain Names.

63.     The Goyard Marks were already distinctive and famous at the time the Cybersquatting Defendants registered the Cybersquatted Subject Domain Names.

64.     The Cybersquatting Defendants have no intellectual property rights in or to the Goyard Marks.

65.     The Cybersquatted Subject Domain Names are identical to, confusingly similar to, or dilutive of at least one of the Goyard Marks.

66.     The Cybersquatting Defendants' registration and maintenance of the Cybersquatted Subject Domain Names is done with knowledge and constitutes a willful violation of Goyard's rights in the Marks. At a minimum, the conduct of these Defendants constitutes reckless disregard for and willful blindness to Goyard's rights.

67.     The Cybersquatting Defendants' actions constitute cybersquatting in violation of § 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

68.     Goyard has no adequate remedy at law.

69.     Goyard has suffered and will continue to suffer irreparable injury and damages while the Cybersquatting Defendants profit due to the above-described activities if these Defendants are not preliminarily and permanently enjoined, while the Cybersquatting Defendants are unjustly profiting from those actions.

## COUNT IV - COMMON LAW UNFAIR COMPETITION

70.     Goyard hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 44 above.

71.     This is an action against Defendants based on their (i) promotion, advertisement, offers for sale, sale, and distribution of goods bearing and/or using marks that are virtually identical to one or more of the Goyard Marks, and (ii) creation and maintenance of an illegal, ongoing marketplace enterprise operating in parallel to the legitimate marketplace in which Goyard sells its genuine goods, in violation of Florida's common law of unfair competition.

72.     Specifically, each Defendant is promoting and otherwise advertising, offering for sale, selling, and distributing goods bearing and/or using counterfeits and infringements of one or more of the Goyard Marks. Defendants are also each using counterfeits and infringements of one or more of the Goyard Marks to unfairly compete with Goyard and others for (i) space in search engine and social media results across an array of search terms and/or (ii) visibility on the World Wide Web.

73.     Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' e-commerce store websites as a whole and all products sold therein by their use of the Goyard Marks.

74. Goyard has no adequate remedy at law and is suffering irreparable injury and damages because of Defendants' actions, while Defendants are unjustly profiting from those actions.

## COUNT V - COMMON LAW TRADEMARK INFRINGEMENT

75. Goyard hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 44 above.

76. Goyard is the owner of all common law rights in and to the Goyard Marks.

77. This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing and/or using one or more of the Goyard Marks.

78. Specifically, each Defendant is promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of one or more of the Goyard Marks.

79. Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' Counterfeit Goods bearing and/or using the Goyard Marks.

80. Goyard has no adequate remedy at law and is suffering damages and irreparable injury because of Defendants' actions, while Defendants are unjustly profiting from those actions.

## PRAYER FOR RELIEF

81. WHEREFORE, Goyard demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a. Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and

Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Goyard Marks; from using the Goyard Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name, trademark, or design that may be calculated to falsely advertise the services or products of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Goyard; from falsely representing themselves as being connected with Goyard, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Goyard; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Goyard Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Goyard, or in any way endorsed by Goyard and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Goyard's name or the Goyard Marks; and from otherwise unfairly competing with Goyard.

b.      Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services, or other

support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits and/or infringements of the Goyard Marks.

   c. Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Goyard's request, those acting in concert or participation with Defendants as service providers who have notice of the injunction, cease hosting, facilitating access to, or providing any supporting service to any and all domain names, including but not limited to the Subject Domain Names, and websites through which Defendants engage in the promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits and/or infringements of the Goyard Marks.

   d. Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Goyard's request, the Defendants and the top level domain (TLD) Registry for each of the Subject Domain Names, and any other domains used by Defendants, or their administrators, including backend registry operators or administrators, place the Subject Domain Names on Registry Hold status for the remainder of the registration period for any such domain name, thus removing them from the TLD zone files which link the Subject Domain Names, and any other domain names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing and/or using counterfeits and/or infringements of the Goyard Marks, to the IP addresses where the associated websites are hosted.

   e. Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority canceling for the life of the current registration or, at Goyard's election, transferring the Subject Domain Names and any other domain names used by Defendants

to engage in their counterfeiting and/or infringement of the Goyard Marks at issue to Goyard's control so they may no longer be used for unlawful purposes.

   f. Entry of an Order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority requiring each Defendant, its agent(s) or assign(s), to assign all rights, title, and interest to its Subject Domain Name(s) and any other domain names used by Defendants to Goyard and, if within five (5) days of entry of such order any Defendant fails to make such an assignment, the Court order the act to be done by another person appointed by the Court at any non-complying Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

   g. Entry of an Order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority requiring each Defendant, its agent(s) or assign(s), to instruct in writing, all search engines to permanently delist or deindex the Subject Domain Name(s) and any other domain names used by Defendants and, if within five (5) days of entry of such order any Defendant fails to make such a written instruction, the Court order the act to be done by another person appointed by the Court at any non-complying Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

   h. Entry of an Order requiring Defendants to account to and pay Goyard for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Goyard be trebled, as provided for under 15 U.S.C. § 1117, or that Goyard be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

       i.      Entry of an Order requiring the Cybersquatting Defendants to account to and pay Goyard for all profits and damages resulting from the Cybersquatting Defendants' cybersquatting activities and that the award to Goyard be trebled, as provided for under 15 U.S.C. § 1117, or that Goyard be awarded statutory damages from the Cybersquatting Defendants in the amount of one hundred thousand dollars ($100,000.00) per cybersquatted domain name used as provided by 15 U.S.C. § 1117(d) of the Lanham Act.

       j.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Goyard's costs and reasonable attorneys' fees and investigative fees associated with bringing this action, including the cost of corrective advertising.

       k.      Entry of an award of pre-judgment interest on the judgment amount.

       l.      Entry of an Order requiring Defendants, at Goyard's request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

       m.      Entry of an Order for any further relief as the Court may deem just and proper.

DATED: November 4, 2025.         Respectfully submitted,

                       STEPHEN M. GAFFIGAN, P.A.

                       By: **Stephen M. Gaffigan**
                       Stephen M. Gaffigan (Fla. Bar No. 025844)
                       Virgilio Gigante (Fla. Bar No. 082635)
                       T. Raquel Wiborg-Rodriguez (Fla. Bar No. 103372)
                       Annie O'Leary (Fla. Bar No. 1050009)
                       401 East Las Olas Blvd., Suite 130-453
                       Ft. Lauderdale, Florida 33301
                       Telephone: (954) 767-4819
                       E-mail: Stephen@smgpa.cloud
                       E-mail: Leo@smgpa.cloud

E-mail: Raquel@smgpa.cloud
E-mail: Annie@smgpa.cloud

Attorneys for Plaintiff
GOYARD ST-HONORE

## SCHEDULE "A"

**[This page is the subject of Plaintiff's Motion to File Under Seal. As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**